IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAYBREE FILLYAW, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:22-CV-1528-G (BH) |
| | ) | |
| CITY POLICE OF CORSICANA, et al., | ) | |
|     Defendants. | ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the plaintiff's claims against the state judges in their official capacities should be **DISMISSED WITHOUT PREJUDICE,** and his remaining claims should be **DISMISSED WITH PREJUDICE**.

**I.     BACKGROUND**

In this civil rights action under 42 U.S.C. §1983, Saybree Fillyaw (Plaintiff) sues the Corsicana Police Department (CPD), CPD Officer Neal Baggett (Officer), and Justices of the Peace Darrell Waller and Greita Jordan (collectively, Judges). (*See* doc. 3 at 1-3.)[2]

Plaintiff claims that the probation officer of a "friend" with whom Plaintiff was in a "relationship" relayed to Officer the friend's complaint that Plaintiff had choked him following a disagreement. (*Id.* at 2-3.) Plaintiff had told her friend—a drug addict with mental health issues—that their relationship was over, but she did not choke him. (*See id.*) Officer pulled Plaintiff over and arrested her for "family violence" despite her protestations of innocence. (*Id.* at 3.) Officer used unnecessary force by grabbing Plaintiff's arm, dragging her out of her car by it, slamming

---

[1] By *Special Order No.* 3-251, this *pro se* case has been automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

her on the car, pushing her back, and handcuffing her too tightly. (*Id.*; doc. 7 at 8.)[3] As Plaintiff was being arrested, her friend recanted his allegations. (doc. 3 at 3.) He explained that he had been bribed to falsely accuse Plaintiff and asked Officer not to arrest her, but Officer refused. (*Id.*) Plaintiff's friend signed a "non-prosecution affidavit." (*Id.*) Plaintiff bonded out of jail, and the "family violence" charge was dismissed. (*Id.* at 4.)

Plaintiff claims Officer fabricated "documents" against her. (doc. 7 at 3.) Judge Waller allegedly "misused his power" and issued a protective order against Plaintiff to Officer, Plaintiff's friend, and Plaintiff's friend's probation officer, despite evidence that no protective order was necessary. (*Id.*; doc. 3 at 4.) He "deliberately put the wrong address" on the protective order, keeping Plaintiff out of her house and later causing her to be arrested. (doc. 3. at 5.) The charges for violating the protective order were later dropped. (*Id.* at 4.) Judge Jordan ordered Plaintiff's eviction based on evidence that she was a "trouble tenant." (*Id.*) Plaintiff was unable to appeal the eviction order because Judge Jordan issued it "after the appeal date," leaving Plaintiff homeless. (*Id.* at 4-5.) Plaintiff claims Officer and Judges took these actions because they were upset about the charges against Plaintiff being dropped, to satisfy the CPD and other entities that she had previously sued, and to retaliate against her for using a "grievance system." (*Id.* at 5; doc. 7 at 3.)

Liberally construing her allegations, Plaintiff appears to sue for false arrest/imprisonment, fabrication of evidence, excessive force, retaliation, and issuance of illegal and "fabricated" orders. (doc. 3 at 2-5; doc. 7 at 6-8, 13.) She seeks monetary damages. (*Id.* at 14.)

## II.   PRELIMINARY SCREENING

Because Plaintiff has been permitted to proceed *in forma pauperis* (IFP), her complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides for *sua sponte*

---

[3] Plaintiff did not sustain a physical injury for which she received a diagnosis or treatment. (doc. 7 at 11.)

dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Neither mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

### III.   SECTION 1983

Plaintiff sues under 42 U.S.C. § 1983. To prevail under that statute, the plaintiff must allege facts showing that (1) she has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A. CPD**

Plaintiff sues the CPD. (doc. 3 at 1; doc. 7 at 6.)[4]

A plaintiff may not bring a civil rights claim against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). Unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot

---

[4] Plaintiff's responses to a magistrate judge's questionnaire constitute an amendment to her pleadings. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

3

engage in any litigation except in concert with the government itself. *Id.* at 313. Courts have held that city police departments are nonjural entities. *See*, *e.g.*, *White v. Ellis Cnty. Commissioners Court*, No. 3:19-CV-3017-M-BH, 2021 WL 2446200, at *3 (N.D. Tex. May 19, 2021)(it is well-settled that the Waxahachie Police Department is not a jural entity subject to suit), *rec. adopted*, 2021 WL 2435352 (N.D. Tex. June 15, 2021), appeal filed Mar. 25, 2022; *Steele v. Partington*, Nol 3:16-CV-360-K, 2017 WL 6453338, at *2 (N.D. Tex. Nov. 27, 2017)(Waxahachie Police Department is a non-jural entity and cannot be sued under § 1983), *rec. adopted*, 2017 WL 6406629 (N.D. Tex. Dec. 14, 2017); *Miller v. City of Houston*, No. 4:11-CV-429, 2013 WL 6222539, at *4 (S.D. Tex. Nov. 29, 2013) ("In Texas, county sheriffs and police departments generally are not legal entities capable of being sued…") (citations omitted); *Clayton v. Garland Police Dept.*, No. 3:09-CV-2048-D ECF, 2010 WL 2640258, at *1 (N.D. Tex. May 11, 2010), *rec accepted*, 2010 WL 2605258 (N.D. Tex. June 28, 2010) (dismissing suit against Garland Police Department because it is not a jural entity); *Plemons v. Amos*, No. 2:03-CV-421-J, 2006 WL 1710415, at *7 (N.D. Tex. June 22, 2006) (collecting cases).

Plaintiff's claims against the CPD should be dismissed.

**B.  Judges**

Plaintiff expressly sues Judges in both their official and individual capacities. (doc. 3 at 1; doc. 7 at 3-4.)

### *1.  Official Capacity Claims*

An official capacity claim is another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The State of Texas is the real party in interest when the plaintiff seeks relief that would be provided by the state. *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (citing *Holloway v. Walker*,

765 F.2d 517, 519 (5th Cir.), *cert. denied*, 474 U.S. 1037 (1985)) (citing *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101 & n. 11 (1984)). Any suit against Judges in their official capacities or as officers of the State of Texas is therefore a suit against the State. *See id.; see also Kentucky*, 473 U.S. at 165; *Freedom from Religion Foundation, Inc. v. Mack,* 4 F.4th 306, 311 (5th Cir. 2021).

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Roberson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curiam) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims).

Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983 or 42 U.S.C. § 1985. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No.

00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curiam). Additionally, "Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims in 28 U.S.C. § 1367(a). *Roberson*, 2005 WL 2673516, at *1 (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002)).

Eleventh Amendment immunity extends to Texas justices of the peace sued in their official capacities as well. *See Law v. Hunt Cty., Texas*, 830 F.Supp.2d 211, 214-15 (N.D. Tex. 2011) ("A justice of the peace, as a judge of the State of Texas, may be entitled to Eleventh Amendment immunity when named in her official capacity.") (citing *Kastner v. Lawrence*, 390 F. App'x 311, 315 (5th Cir. 2010) (per curiam); *Davis*, 565 F.3d at 228); *see also Wilkins v. Attorney Keval Patel Law Firm*, Civil Action No. 3:23-cv-00088, 2023 WL 4108841, at *2 (S.D. Tex. June 21, 2023), *rec. accepted* 2023 WL 4424604 (S.D. Tex. July 10, 2023) (finding that Eleventh Amendment barred official-capacity claims against Texas justice of the peace) (citation omitted); *Jewell v. Barlett*, No. 3:19-cv-02667-N-BT, 2022 WL 1129910, at *4 (N.D. Tex. Mar. 22, 2022), *rec. accepted* 2022 WL 1128957 (N.D. Tex. Apr. 15, 2022) (same). Plaintiff's claims against Judges in their official capacities for monetary damages are barred and should be dismissed without prejudice. *See*, *e.g.*, *Du Bois v. Warne*, 336 F. App'x 407, 409 (5th Cir. 2009) (per curiam); *Anderson v. Jackson State Univ.*, 675 F. App'x 461, 464 (5th Cir. 2017) (per curiam) (Eleventh Amendment dismissal without prejudice).

### 2. *Individual Capacity Claims*

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745-46 (1982). Judges are immune from suit from damages resulting from any judicial act. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). "This immunity extends to all judges, irrespective of their status in the judicial hierarchy, including

justices of the peace." *Laird v. Spencer*, 611 F.Supp.3d 250, 255 (M.D. La. 2020) (citing *Brewer v. Blackwell*, 692 F.2d 387, 396 (5th Cir. 1982)). Allegations of bad faith or malice do not overcome judicial immunity. *Mireles*, 502 U.S. at 11. A plaintiff can overcome the bar of judicial immunity only in two very limited circumstances. *See id.* at 11-12; *see also Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

First, a judge is not immune from suit for actions that are not "judicial" in nature. *See Mireles*, 502 U.S. at 11. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Davis*, 565 F.3d at 222 (quoting *Mireles*, 502 U.S. at 12). "[T]he relevant inquiry is the 'nature' and 'function' of the fact, not the 'act itself.' In other words, [a court should] look to the particular act's relation to a general function normally performed by a judge…." *Id.*

> [The Fifth Circuit] has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. These factors are broadly construed in favor of immunity.

*Davis*, 565 F.3d at 222-23 (citations omitted). Second, a judge is not immune from suit for actions that although judicial in nature, are taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 12; *see also Malina v. Gonzalez*, 994 F.2d 1121, 1124 (5th Cir. 1993)).

Here, Plaintiff complains about the issuance of judicial orders, which are judicial acts. *See, e.g.*, *Williams v. Pernell*, 2023 WL 2264195, at *3 (W.D. Tex. Feb. 23, 2023) ("Plaintiff alleges that Judge Hallford violated his due process rights by granting a protective order against him. Because the act of granting a protective order is judicial, Judge Hallford is entitled to absolute

judicial immunity…") (citing *Boyd*, 31 F.3d at 285); *Wells v. Ali*, 304 F. App'x 292, 294 (5th Cir. 2008) (per curiam) (finding judge entitled to immunity against claim that the judge violated the plaintiff's rights by ordering his eviction). Plaintiff does not allege that either judge in this case acted in the complete absence of all jurisdiction.

Plaintiff's claims for against Judges in their individual capacities for monetary damages are barred by judicial immunity.

## C. Officer

Plaintiff also sues Officer in her individual and official capacities. (doc. 7 at 3-4.)

### 1. *Official Capacity Claims*

Plaintiff's official-capacity suit against Officer is a suit against the City of Corsicana. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). Municipalities can also be liable for the illegal or unconstitutional actions of final policymakers. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). "Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

"The description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept's*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Plaintiff has failed to identify a policy or custom that was the moving force of a constitutional violation. Further, as shown below, Plaintiff has failed to plausibly allege a constitutional violation, which is a prerequisite to municipal liability. *See*, *e.g.*, *Salazar-Limon v. City of Houston*, 97 F.Supp.3d 898, 910 (S.D. Tex. 2015). Accordingly, Plaintiff fails to state an official-capacity claim against Officer.

### *1. Individual Capacity Claims*

Plaintiff also sues Officer in her individual capacity. (doc. 7 at 3-4.)

### a. False Arrest/Imprisonment

Plaintiff claims that Officer falsely arrested and imprisoned her. (doc. 3 at 2.) "[T]o state a § 1983 claim for false arrest/false imprisonment, [she] must plausibly allege that [Officer] 'did not have probable cause to arrest [her].'" *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). "A warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense stated at the time of arrest or booking." *District of Columbia v. Wesby*, 538 U.S. 48, 54 n. 2 (2018).

Plaintiff appears to claim that she was arrested for assault family violence impeding breath or circulation, in violation of Texas Penal Code § 22.01(b)(2)(B). (*See* doc. 3 at 3.) That provision prohibits assault[5] against a person with whom one is in a statutorily described relationship when the offense "is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." The requisite relationship element is met if the assailant is in a "dating relationship" with the victim. TEXAS PENAL CODE ANN. § 22.01(b)(2)(B). Dating relationship means a relationship between individuals who have or have had a continuing relationship of a romantic nature considering (1) the length of the relationship, (2) the nature of

---

[5] A person commits an assault if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. TEX. PEN. CODE ANN. §22.01(a).

the relationship, and (3) the frequency and type of interaction between the persons involved in the relationship. TEX. FAM. CODE ANN. § 71.0021(b).

Plaintiff has not plausibly alleged that Officer lacked probable cause to arrest her for assault family violence impeding breath or circulation, or for another offense such as simple assault. The arrest was based on a complaint from the victim—with whom Plaintiff was in a "relationship"—that she choked him. (*Id.* at 3.) A victim's complaint is generally sufficient to establish probable cause unless the officer has reason to believe the victim is lying or mistaken. *See, e.g.*, *Johnson v. Bryant*, No. 94-10661, 1995 WL 29317, at *3 (5th Cir. Jan. 17, 1995) ("A victim's accusation identifying an individual as a perpetrator is generally sufficient to establish probable cause."); *United States v. Burbidge*, 252 F.3d 775, 778 (5th Cir. 2001) (an eyewitness identification will establish probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying [or mistaken]"). Absent grounds to believe that the friend was lying or mistaken about Plaintiff's actions, Officer had probable cause to arrest her.

Plaintiff has alleged that her friend was a drug addict with mental health issues, but she does not allege that Officer knew or should have known that. She also claims that there was not probable cause because the victim recanted the accusation while Officer was arresting her and because he later signed an affidavit of non-prosecution.

"Neither an arrestee's protestations of innocence nor a putative victim's inconsistent statements necessarily vitiate probable cause", however. *Fogelman v. Donato*, 111 F.Supp.3d 282, 285 (E.D.N.Y. 2015). This principle holds "especially" true "in a domestic violence situation" where "stories conflict and recantations happen so frequently." *Torres v. City of New York*, No. 20-CV-4007, 2022 WL 955152, at *5 (E.D.N.Y. Mar. 30, 2022). In *Torres*, the court rejected a false arrest claim when the child victim alleged that his mother physically abused him and then

11

recanted that allegation after he saw her in handcuffs. *Id.* at *2, 4. Noting the "pressure on domestic violence victims to recant and protest their attackers' innocence and the unreliability of those recantations," the court held that the "police officers were objectively reasonable in not accepting the recantation at face value, even putting aside that it occurred after plaintiff had been arrested." *Id.* at *4 (citing *United States v. Carthen*, 681 F.3d 94, 103 (2nd Cir. 2012); *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007); Lindsay v. Malloy et al., FILIAL DEPENDANCE AND RECANTATION OF CHILD SEXUAL ABUSE ALLEGATIONS, 46 J. Am. Acad. Child Adolesc. Psychiatry 2 (2007); Lisa Marie DeSanctis, BRIDGING THE GAP BETWEEN THE RULES OF EVIDENCE AND JUSTICE FOR VICTIMS OF DOMESTIC VIOLENCE, 8 Yale J.L. & Feminism, 359, 367-68 (1996)); *see also Felix v. New York State Dep't of Corr. and Cmty. Supervision*, No. 16-CV-7978 (CS), 2018 WL 3542859, at *9 (S.D.N.Y. July 18, 2013) (refusing to treat recantation from domestic assault victim "as vitiating reasonable cause").

While *Torres* and the other out-of-circuit cases are not binding, they are persuasive. Here, in the context of apparent domestic violence, neither the friend's recantation or apparent desire that Plaintiff not be prosecuted vitiated Officer's probable cause either. *See*, *e.g.*, *Powell v. Wagner*, Civil Action No. 3:16-CV-0276, 2018 WL 2388592, at *2 (S.D. Tex. May 25, 2018) ("Although Powell's wife later told the district attorney that she did not want to pursue the prosecution, her initial accusations of domestic assault gave the deputies probable cause to make his arrest.") (citing *Jones v. Sparta Comm. Hosp.*, 716 F. App'x 547, 49 (7th Cir. 2018)).

Plaintiff fails to state a plausible false arrest/false imprisonment claim.[6]

---

[6] Plaintiff also claims that Officer used Plaintiff's friends and family to "fabricate" a police report "to try to bring false charges against [her.]" (doc. 3 at 2-3.). To the extent this is a separate claim from the false arrest/imprisonment claim, while there is a "due process right not to have police deliberately fabricate evidence and use it to frame and bring charges against a person," *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015), Plaintiff's bare allegation of fabrication without any supporting facts is too conclusory to state a claim. *See*, *e.g.*, *Miguel v. Cochran*, Civil Action No. 5:20-CV-041-BQ, 2020 WL 5778130, at *5 (N.D. Tex. Sept. 11, 2020) (citing *Iqbal*, 556 U.S. at 679) (vague and conclusory statements do not warrant a presumption of truth and are insufficient to state a claim).

### b. Retaliatory Arrest

Plaintiff appears to allege that Officer arrested her in retaliation for using an unspecified grievance system. (doc. 7 at 6.) The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., "but for the retaliatory motive the complained of incident…would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (1995) (citations omitted), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed, 2d 747 (1996). In the case of a retaliatory arrest, the plaintiff must "plead and prove the absence of probable cause for the underlying criminal charge." *Nieves v. Barlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (internal quotation marks omitted).

As discussed, Plaintiff has not plausibly alleged the absence of probable cause to arrest her, so a retaliatory arrest claim fails.

### c. Excessive Force

Plaintiff alleges that Officer used excessive force when arresting her. (doc. 3 at 3.) To succeed on a Fourth Amendment excessive force claim under § 1983, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

Here, Plaintiff does not allege any injury from Officer's alleged use of force; she admits that there was no diagnosed injury requiring medical treatment. (doc. 7 at 11.) The absence of a physical injury precludes an excessive force claim. *See, e.g.*, *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) ("Although a showing of 'significant injury' is no longer required in the context of an excessive force claim, 'we do require a plaintiff asserting an excessive force claim to have

suffered at least some form of injury.'") (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). Plaintiff fails to state an excessive force claim upon which relief may be granted.

In conclusion, Plaintiff's individual capacity claims against Officer should be dismissed.

## IV. LEAVE TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already plead his best case. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). Here, Plaintiff responded to a detailed questionnaire. A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint.").

Because Plaintiff has plead her best case, leave to amend is neither necessary nor warranted. *See, e.g., Duke v. Dallas Cty.*, No. 3:20-CV-117-G (BH), 2021 WL 3525106, at *3 (N.D. Tex. June 25, 2021), *rec. accepted*, 2021 WL 3204565 (N.D. Tex. July 29, 2021).

## V. RECOMMENDATION

Plaintiff's claims against the state judges in their official capacities should be dismissed **WITHOUT PREJUDICE** under the Eleventh Amendment, and her remaining claims should be dismissed **WITH PREJUDICE** for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B).

**SIGNED on this 1st day of November, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE